**TPO, INCORPORATED, Petitioner,**

v.

**Hon. Thomas R. McMILLEN, Respondent.**

No. 72–1098.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1972.

Decided April 28, 1972.

James S. Gordon, George S. Feiwell, Samuel Morgan, Chicago, Ill., for petitioner.

Richard J. Carmel, Dan Brusslan, Paul Theodore Ruxin, Chicago, Ill., for respondent.

Before SWYGERT, Chief Judge, and KILEY and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

Petitioner seeks a writ of mandamus to nullify the assignment of its case in the district court to a magistrate for ruling on petitioner's motion to dismiss.

Petitioner is a defendant in the case of Zeitman v. Walston & Co., No. 71 C 2074 in the U. S. District Court for the Northern District of Illinois. Petitioner filed a motion to dismiss for failure to state a claim upon which relief can be granted. Because affidavits were attached, the motion was to be treated as a motion for summary judgment. Fed. R.Civ.P. 12(b) (6) and 56. All briefs connected with the motion were filed by November 29, 1971.

At a status-report hearing on January 24, 1972, plaintiffs' counsel expressed his concern over the slow pace of pretrial proceedings because of plaintiffs' advanced age (both were 78), ill health and poor economic status, he pressed for a trial date during the spring. He even offered to dismiss the complaint against petitioner and two other defendants if it would expedite the case.

The district judge observed, "We are pretty far behind on motions," and decided to refer the case to a magistrate "to conclude everything up to the date of trial." Petitioner's motion to vacate the order of reference, which argued that a magistrate was without power to rule on a motion to dismiss, was denied. No other motion or contested matter was pending when the reference order was entered.

U. S. Magistrate James T. Balog on February 9, 1972, entered an order denying petitioner's motion to dismiss. On February 15, petitioner filed its mandamus petition; two days later this court stayed all proceedings before the magistrate until further order. Plaintiffs and the district judge filed responses to the petition and the case was argued April 5.

The statute under which the district judge made the reference is the 1968 United States Magistrates Act, 28 U.S. C. §§ 631–639. A majority of judges of a district court may appoint a full-time magistrate for a term of eight years. The magistrate must be a member of the bar of the state where he is to serve, must be determined to be competent to perform the duties of the office, must not be related to a judge of the appointing court and must be under 70 years of age. He may be removed by a majority of the judges only for incompetency, misconduct, neglect of duty, or physical or mental disability. (28 U.S.C. § 631.) He may receive an annual salary of up to $22,500; the salary may not be reduced during his term below that fixed at the beginning of the term. (28 U.S. C. § 634.)

Section 636(b) of the statute provides in part:

"Any district court of the United States, by the concurrence of a majority of all the judges of such district

court, may establish rules pursuant to which any full-time United States magistrate . . . may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

\* \* \* \* \* \*

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions. . . ."

Pursuant to this statute, the District Court for the Northern District of Illinois has adopted these "Magistrate Rules":

"1(C) The Magistrates shall perform the following additional duties upon direction of a Judge approved by order of the Executive Committee:

\* \* \* \* \* \*

"(b) assist Judges in conducting pre-trial proceedings in civil cases.

. . .

\* \* \* \* \* \*

"2(2) (b) An appeal from a final order entered by a Magistrate shall be filed within twenty (20) days with the Judge who referred the matter to a Magistrate."

The issues raised by this petition are whether the district court may delegate to a magistrate, and whether a magistrate has the power to rule upon, motions to dismiss or motions for summary judgment. These issues are important

to the administration of justice through the instrumentality of magistrates and require a close analysis of the legislative history of the magistrates act.

## LEGISLATIVE HISTORY

The Senate Subcommittee on Improvements in Judicial Machinery held exploratory hearings on the United States commissioner system on October 13, December 14 and 15, 1965, and February 8 and 9, 1966.[1] The information gathered at these investigative hearings, supplemented by data gathered from the responses of more than 400 U. S. commissioners to a subcommittee questionnaire and research memoranda produced by the subcommittee staff, provided the foundation for a preliminary draft of a proposed federal magistrates act which was widely circulated in April, 1966.

As modified in light of criticisms from judges, law professors, attorneys, commissioners and other interested parties, the bill was introduced in the Senate as S. 3475 on June 7, 1966.[2] The subcommittee held hearings on S. 3475 on July 11–13 and August 23, 1966, and took testimony from a wide range of interested parties.[3]

S. 3475, in an amended form that reflected changes suggested by witnesses at the Senate hearings and by persons to whom the bill was sent, was introduced in the Senate on February 8, 1967, as S. 945.[4] Hearings on S. 945 were held on May 25, 1967;[5] it was reported favorably by the Senate Committee on the Judiciary on June 28, 1967,[6] and was unanimously passed by the Senate. Six simi-

1. Hearings on the U. S. commissioner system Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th Cong., 1st and 2d Sess., pts. 1, 2 and 3 (1965–66) ("Preliminary Hearings").

2. S. 3475, "The Federal Magistrates Act of 1966," 89th Cong., 2d Sess. ("S. 3475"). As soon as it was printed, the bill was circulated to more than 1,500 persons, including every federal judge, U. S. attorney and U. S. commissioner.

3. Hearings on S. 3475 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th Cong., 2d Sess. (1966) ("Senate Hearings").

4. S. 945, "The Federal Magistrates Act of 1967," 90th Cong., 1st Sess. ("S. 945").

5. Included in Senate Hearings (see n. 3), 90th Cong., 1st Sess.

6. S.Rep.No.371, 90th Cong., 1st Sess. ("S. Rep. 371").

lar bills were introduced in the House,[7] the hearings on which, together with S. 945, were held by Subcommittee No. 4 of the House Committee on the Judiciary on March 7 and 13, 1968.[8] S. 945 was reported favorably by the House Committee on the Judiciary on July 3, 1968,[9] and was passed by the House of Representatives.

The federal magistrates act was enacted on October 17, 1968,[10] to become generally effective within any federal judicial district on the date the first magistrate assumed office within that district or on October 17, 1971, whichever date was earlier.

### Magistrates' Status and Jurisdiction

The 1965 exploratory hearings held by the Senate subcommittee established that the U. S. commissioner system was little understood, even by the commissioners; that almost one-third of them were not lawyers;[11] that the fee system under which they were compensated probably resulted in deprivation of due process of law since the commissioners had a pecuniary interest in reaching a conclusion detrimental to the defendant.[12] Although they constituted the "front line of Federal justice"[13] and "were being called upon to apply some of the most sophisticated rules of constitutional law,"[14] particularly under the Criminal Justice Act of 1964,[15] the commissioners operated with great disparity from district to district and had become the "forgotten men" of the federal judicial system.[16] The hearings raised a threshold question of whether the system should be eliminated entirely, or "down-graded" in importance, or revised substantially and "upgraded."

The consensus ran heavily in favor of upgrading the system with the result that the federal magistrates act as ultimately passed provided that[17] (1) the title of the office be changed from U. S. commissioner to U. S. magistrate; (2) all magistrates be attorneys unless it is impossible to find a qualified attorney; (3) other minimum qualifications be established to insure independence and disinterest; (4) the anachronistic fee system be replaced with salaries; (5) full-time magistrates be given a secure eight-year term of office subject to removal only for cause and (6) full-time magistrates be supplied with office space, clerical assistants and supplies.

In addition to the "upgrading" provisions, the act as ultimately passed revised substantially the two important jurisdictional areas where the former commissioner devoted most of his time and efforts and where it was anticipated that the magistrate would devote most of his—preliminary examinations and the trial of petty and minor offenses.

Rule 5 of the Federal Rules of Criminal Procedure requires that an arrested person be taken without unnecessary delay before the nearest available magistrate, who shall then inform the defendant of the complaint against him, of his right to retain counsel, of his right to request assignment of counsel if he is unable to obtain counsel, of his right to a preliminary examination, of his right not to make a statement and that any statement made by him may be used against him. The magistrate shall allow

7. H.R. 5502, 8277, 8520, 8932, 9970 and 10841, 90th Cong., 1st Sess. (1967).

8. Hearings on the federal magistrates act Before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 2d Sess., ser. 17 ("House Hearings").

9. H.Rep.No.1629, 90th Cong., 2d Sess. ("H.Rep. 1629") U.S.Code Cong. & Admin.News, 1968, p. 4252.

10. Pub.L.No. 90–578, Title I, § 101, 82 Stat. 1108, 28 U.S.C. § 631ff.

11. Preliminary Hearings, 2; House Hearings, 69–70.

12. Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); Senate Hearings, 277.

13. S.Rep. 371, 8.

14. House Hearings, 70 (Sen. Tydings).

15. 18 U.S.C. § 3006A ff.

16. Preliminary Hearings, 2 (Sen. Tydings).

17. H.Rep. 1629, 11.

the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail.

If the defendant does not waive preliminary examination, the magistrate shall hear the evidence within a reasonable time and the defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall require him to answer the charge in the district court. Otherwise the magistrate shall discharge him.

The federal magistrates act amended 18 U.S.C. § 3060 to require the holding of the preliminary examination no later than 10 days following the initial appearance if the arrested person is held in custody or no later than 20 days if he is released from custody.

In addition to the considerable amount of testimony heard on the problems of, and suggestions for "upgrading," the status of magistrates and that relating to the scope and procedure of preliminary examinations [18] and other magistrate functions formerly performed by commissioners,[19] the great bulk of testimony, documents and questioning throughout the preliminary hearings and the subsequent Senate and House hearings of 1965–1968 dealt with the expansion of magistrate jurisdiction beyond the commissioner jurisdiction over petty offenses (the penalty for which does not exceed imprisonment for six months or fine exceeding $500, or both) [20] committed upon federal enclaves.[21]

The act ultimately amended 18 U.S.C. § 3401 to expand the magistrate's criminal trial authority to offenses committed anywhere instead of only on federal enclaves and to all minor offenses, defined as misdemeanors the penalty for which does not exceed imprisonment for one year or a fine of not more than $1,000 or both.

### Constitutional Concern

From the outset of the preliminary hearings[22] and throughout the period until the act was passed, there was an abiding concern by interested witnesses before the committees considering the various proposed bills,[23] and by senators and representatives [24] that expanding

18. Much testimony, for example, was concerned with the fact that "preliminary examination afforded a necessary and useful medium for defense counsel to obtain discovery of the prosecution's evidence" and the question whether the discovery aspects should be enlarged. S. Rep. 371, 34. The Senate Committee on the Judiciary concluded, however, that "discovery procedure should remain separate and distinct from the preliminary examination." Id. at 35.

19. The act confers upon magistrates "all powers and duties conferred or imposed upon United States commissioners by. law or by the Rules of Criminal Procedure." 28 U.S.C. § 636(a) (1). Powers and duties are conferred by Rule 3 (giving oaths); 4 (issuance of arrest warrant); 17 (issuance of subpoenas); 40 (issuance of warrant of removal to another district); 41 (issuance of warrant for search); 46 (release on bail).

20. 18 U.S.C. § 1(3).

21. 18 U.S.C. § 3401 (prior to amendment by magistrate act).

22. A report entitled "U. S. Commissioners," prepared by Professor John Hanna of the Columbia University Law School and submitted by Henry P. Chandler, Director of the Administrative Office of the U. S. Courts in September, 1942, to the Judicial Conference of the United States, was placed in the record of the preliminary hearings on the first day. It raised the Article III constitutional argument as a caveat to be considered before enlarging the jurisdiction of U. S. commissioners. Preliminary Hearings, 63–64.

23. Preliminary Hearings, 175–83 (Judge Talbot Smith, "A Federal District Judge Looks at His Jurisdiction," 51 A.B.A.J. 105 (1965)); 265 (Talbot Smith). Senate Hearings, 16, 36 (staff memoranda), 161, 178–79, 187–88, 235.

24. House Hearings, 79, 124–27, 134–36, 150–51. S.Rep. 371, 30–31. H.Rep. 1629, 21.

the jurisdiction of commissioners or magistrates might violate the dual constitutional concepts (1) that Article III of the Constitution vests the judicial power of the United States in judges possessing life tenure and undiminishable salaries [25] and (2) that due process of law encompasses the right of litigants to have "cases" or "controversies" determined by Article III judges.[26]

The constitutional doubts were brought to a head when former assistant attorney general Fred M. Vinson, Jr. testified in 1966 to express the view of the Department of Justice that the section of the bill "which authorizes Magistrates to try minor offenses, appears to establish 'judges' who do not meet the standards for Federal judges set forth in Article 3 of the Constitution." [27] This view resulted in the Senate subcommittee staff's preparation of a lengthy memorandum of law entitled "The Constitutionality of Trial of Minor Offenses by U. S. Magistrates," which concluded:[28]

"Three features of the minor offense provision of S. 3475 bring it within three separate lines of authori-ty which indicate that trial of such offenses by United States Magistrates does not conflict with the Constitution. . . .

"*First*, the magistrate is an officer of the United States District Court, appointed by that court and subject at all times to the court's direction and control. When a case is tried before a magistrate, jurisdiction remains in the district court and is simply exercised through the medium of the magistrate. The magistrate's position is analogous to the position of the referee in bankruptcy, of the special master, and of the present United States Commissioner.

"*Second*, both the Government and the defendant must consent to trial before the magistrate rather than before the district judge. . . .

"*Third*, the defendant if convicted may appeal to the district court. . . ."

As a result of the doubts of the Department of Justice over the constitutionality of permitting magistrates to try cases committed to "the judicial Power of the United States" [29] and the

25. Among the grievances against George III detailed in the Declaration of Independence was that "He has made judges dependent on his will alone, for the tenure of their offices, and the amount and payment of their salaries." Hamilton urged that "complete independence of the courts of justice is particularly essential" and that independence be assured by life tenure (The Federalist No. 78) and by fixed provision for support which shall not be diminished during continuance in office (The Federalist No. 79). Article III, section 1 of the Constitution provides, "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

26. Article III, section 2, cl. 1 specifies the cases or controversies to which "the judicial Power shall extend."

27. Senate Hearings, 109, 129.

28. Senate Hearings, 246 at 256.

29. Mr. Justice Douglas summarized his concern over the performance of judicial power by non-Article III judges in his dissent in Glidden Co. v. Zdanok, 370 U.S. 530 at 606, 82 S.Ct. 1459 at 1502, 8 L.Ed.2d 671 (1962):
   "In sum, Judges who do not perform Article III functions, who do not enjoy *constitutional* tenure and whose salaries are not *constitutionally* protected against diminution during their term of office cannot be Article III judges.
   "Judges who perform 'judicial' functions on Article I courts do not adjudicate 'cases' or 'controversies' in the sense of Article III. They are not bound by the requirements of the Seventh Amendment concerning trial by jury.

staff memorandum in response, the language of the proposed legislation was revised to make it completely clear that both the government and the defendant must consent to a trial before a magistrate of a minor offense[30] and that an appeal lies from the judgment of the magistrate to a district court judge.[31]

The constitutional problems were not solved to everyone's satisfaction by the carefully revised provisions. The Department of Justice, although generally supporting the passage of the act, concluded that the constitutional problem is "an issue over which a genuine difference of opinion can exist." [32]   A lively debate over the constitutional soundness of the bill occurred during the hearings before the subcommittee of the House Committee on the Judiciary.[33]   Repre-

sentative Cahill of New Jersey expressed strong dissenting views to the favorable report on the bill by the House Judiciary Committee[34] and on the floor of Congress.[35]   When the implementing rules were adopted by the Supreme Court, Mr. Justice Black, joined by Mr. Justice Douglas, filed a dissenting opinion raising constitutional doubts.[36]

## Magistrates' Civil Jurisdiction

Although a great portion of the considerable effort expended on the development of the magistrates act was directed to the trial of minor criminal offenses and the preliminary examination required in criminal cases, all the constitutional issues debated in regard thereto are equally applicable to the magistrates' jurisdiction over civil matters [37] inas-

> "Judges who sit on Article I courts are chosen for administrative or allied skills, not for their qualifications to sit in cases involving the vast interests of life, liberty, or property for whose protection the Bill of Rights and the other guarantees in the main body of the Constitution, including the ban on bills of attainder and *ex post facto* laws, were designed.   Judges who might be confirmed for an Article I court might never pass muster for the onerous and life-or-death duties of Article III judges."

30. 18 U.S.C. § 3401(b) reads: "Any person charged with a minor offense may elect, however, to be tried before a judge of the district court for the district in which the offense was committed.   The magistrate shall carefully explain to the defendant that he has a right to trial before a judge of the district court and that he may have a right to trial by jury before such judge and shall not proceed to try the case unless the defendant, after such explanation, signs a written consent to be tried before the magistrate that specifically waives both a trial before a judge of the district court and any right to trial by jury that he may have." In regard to the government, the Senate report pointed out, "Of course, the U. S. attorney will always have the option of prosecuting a minor offense either in the district court or before a magistrate. . . . .," presumably by bringing the defendant before one or the other.   S.Rep. 371, 29.

31. 18 U.S.C. § 3402 provides in part: "In all cases of conviction by a United States magistrate an appeal of right shall lie from the judgment of the magistrate to. a judge of the district court of the district in which the offense. was committed."   Rule 8 of the Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates promulgated by the Supreme Court on January 27, 1971, provides that the defendant upon such appeal shall not be entitled to a trial *de novo*, but to an appeal with a scope the same as to a court of appeals.   51 F.R.D. 197, 205.   *Cf.* Rule 5, which provides that if a magistrate's decision is appealable by the government, it is subject to a rehearing *de novo* by the district judge. 51 F.R.D. at 203.

32. S.Rep. 371, 31.

33. House Hearings, 79, 124–27, 134–38.

34. H.Rep. 1629, 44–47.   "I am convinced that the adjudicative powers which this legislation would entrust to such magistrates include those which the Constitution requires to be entrusted only to judges of the district courts."   *Id.* at 44, U.S.Code Cong. & Admin.News, 1968, p. 4267.

35. 114 Cong.Rec. 27334 ff.

36. 51 F.R.D. 206–210.

37. The constitutional argument that due process requires a determination by an Article III judge is, to a certain extent, tied to the constitutional guarantee to a trial by jury.   For example, the early arguments that federal magistrates could

much as Article III provides that the judicial power of the United States "shall extend to all Cases, in Law and Equity."

The legislative history of the magistrates' civil jurisdiction must therefore be viewed in the context of the constitutional problems of which Congress had been made acutely aware.

When the hearings commenced in 1965, the civil jurisdiction of U. S. commissioners was limited to administering oaths and taking acknowledgments, affidavits and depositions,[38] a power also accorded to any officer authorized to administer oaths, such as notary publics and court clerks.[39] Analogously, masters were utilized to conduct investigations, perform ministerial acts, examine witnesses located throughout the country pursuant to a supplementary proceeding, and to assist in pretrial discovery,[40] such as taking depositions,[41] overseeing the production of documents under Rule 34,[42] reporting on the materiality of certain exhibits[43] and reporting on the validity of objections to interrogatories.[44]

The first witness at the investigative hearings in 1965, after reviewing the role of the commissioner and suggesting improvements in the system, limited his civil case suggestions to the question, "Why couldn't U. S. commissioners be utilized to handle settlement conferences. . . . ?"[45] Virtually nothing else was said about civil jurisdiction at those hearings. When the subcommittee adjourned in February, 1966, the subcommittee staff prepared a preliminary draft of a bill which included a proposed section 636(b):[46]

"(b) Any district court of the United States may assign to any United States magistrate appointed by that court the discharge within the territorial jurisdiction prescribed by his appointment of such additional powers or duties as are not inconsistent with the Constitution and laws of the United States. Such additional powers and duties may include, but are not restricted to—

"(1) service as a special master in an appropriate civil action;

"(2) supervision of the conduct of any pretrial discovery proceeding in a civil or criminal action; and

"(3) preliminary consideration of applications for post-trial relief made by individuals convicted of criminal offenses."

The subcommittee staff also prepared a memorandum dated April 28, 1966, which accompanied the preliminary

constitutionally try petty offenses was grounded upon the common law history which has led to the conclusion that the Constitution does not require a jury for "petty offenses." Frankfurter & Corcoran, "Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury," 39 Harv.L.Rev. 917 (1926); Doub & Kestenbaum, "Federal Magistrates for the Trial of Petty Offenses: Need and Constitutionality," 107 U.Pa.L.Rev. 443 (1959). Thus although Article III, section 2, cl. 3 requires that the "Trial of All Crimes . . . shall be by Jury," a jury is not required for petty offenses. Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). In civil cases, the Constitution (amend. VII) creates its own dichotomy: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . . "

38. Preliminary Hearings, 55–56; Senate Hearings, 264, 364; 28 U.S. § 637.

39. 43 U.S.C. § 105; Fed.R.Civ.P. 28.

40. Judge Irving R. Kaufman, "Masters in the Federal Courts: Rule 53," 58 Col.L. Rev. 452, 463 (1958).

41. United Artists Corp. v. Grinieff, 17 Fed.Rules Serv. 30b.42 (S.D.N.Y.1952).

42. Olson Transp. Co. v. Socony-Vacuum Oil Co., 7 F.R.D. 134 (E.D.Wis.1944).

43. Stentor Elec. Mfg. Co. v. Klaxon Co., 28 F.Supp. 665 (D.Del.1939).

44. Zunkel v. Litchfield, 21 F. 196 (S.D. Iowa 1884).

45. Preliminary Hearings, 10.

46. Senate Hearings, 20–21.

draft and commented on "new functions" as follows: [47]

"The bill authorizes the district courts to assign full-time magistrates such additional duties *as are consistent with their non-Article III status*. The provision lists by way of suggestion rather than requirement, the following: supervision of pretrial discovery proceedings in both civil and criminal cases; the holding of pretrial hearings; preliminary review of petitions for post-conviction relief; assignments to act as special masters in appropriate civil cases."

After the preliminary draft had been widely circulated, it was revised and introduced on June 7, 1966, as S. 3475. There was no change in the section 636(b) language [48] but, somewhat significantly, the staff memorandum which accompanied S. 3475 contained the earlier memorandum language except that the words "the holding of pretrial hearings" had been eliminated.[49]

Senator Tydings of Maryland, the chairman of the Subcommittee on Improvements in Judicial Machinery, opened the July, 1966, hearings on S. 3475 by stating the purposes of the bill, one of which was to assign to magistrates "certain functions that could be handled by a person other than an article III judge." [50]

In September, 1966, the Judicial Conference of the United States approved a report by its Committee on the Administration of the Criminal Law, which included the following: [51]

"The Committee is of the opinion that the enumeration of duties in Section 636(b) as now worded presents a delegation which is so broad in scope and so general as to make this subsection vulnerable to possible constitutional attack. . . .

"It is further recommended that the subsequent language of Section 636(b) listing the additional powers and duties be deleted. This might not only avoid the constitutional problems referred to above, but would give the court sufficient flexibility in assigning duties on a case-by-case basis under such limitations as the court may deem necessary or appropriate."

After the July-August, 1966, hearings and the above action by the Judicial Conference, a revised bill, S. 945, was introduced on February 8, 1967. Section 636(b) was revised [52] to the same language in which it was ultimately enacted, which is:

"(b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional

---

47. Senate Hearings, 14 (emphasis added).

48. Senate Hearings, 41.

49. Senate Hearings, 34.

50. Senate Hearings, 2. One of the early witnesses was Chief Judge Theodore Levin of the Eastern District of Michigan who strongly opposed expanding the magistrates' civil jurisdiction. He testified at pages 61, 68 and 69: " . . . I take the view, as I believe all my colleagues do, that the judge who tries the case ought to conduct the pretrial proceedings so that he is familiar with the legal issues and the facts prior to trial. My experience as a district judge . . . also persuades me that where the pretrial is conducted by the judge who is to try the case, many of the motions which ordinarily take the time of the court can be obviated as the pretrial or pretrials progress." When a master is appointed, "you do not get the judge, you get the judicial determination of the master. . . . I cannot think of any ministerial area where a master could take over, where it does not result in adjudication. I practiced before masters in the Federal court system, and I found to my great disappointment that I received the judgment of the master."

51. Senate Hearings, 241n.

52. Senate Hearings, 241e.

duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—

"(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

"(3) preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing."

The changes in the three categories of "additional duties" were drastic:

(1) "service as a special master" was expressly made subject to the Federal Rules of Civil Procedure which include the highly restrictive Rule 53; [53]

(2) "supervision of the conduct" of pretrial or discovery proceedings was reduced to "assistance to a district judge"; and

(3) "preliminary consideration of applications for posttrial relief" was reduced to "preliminary review" leading to "submission of a report and recommendations to facilitate the decision of the district judge" as to "whether there should be a hearing."

The Senate Committee on the Judiciary was extremely cautious in describing the civil duties of magistrates in its favorable report on S. 945 of June 28, 1967: [54]

" . . . [P]roviding that assignments are to be governed by rule of court protects against potential abuses of the assignment power by individual judges who, in misguided attempts to expedite the business before them, might unwittingly delegate to magistrates responsibilities that are more properly discharged by the judge.

"Second, the subsection clearly prohibits assignments or delegations to magistrates that are inconsistent with the Constitution and laws of the United States. This prohibition reflects in particular your committee's recognition that any additional duty assigned to magistrate must be within the bounds of what may be constitutionally performed by a nonarticle III judicial officer.

\*    \*    \*    \*    \*    \*

"(1) A magistrate may be assigned to serve as a special master in an appropriate civil action, under the conditions imposed by pertinent provisions of Federal Rules of Civil Procedure. This latter requirement was added as a clarification in response to comments made by the Committee on the Administration of the Criminal Law of the Judicial Conference. In particular, rule 53(b) provides that a reference to a master shall be the exception and not the rule; that in actions tried by a jury a reference shall be made only when the issues are complicated; and that in actions tried without a jury, save in matters of account, a reference shall be made only upon a showing that exceptional circumstances require it. These conditions, which in essence reflect the rule laid down by the Supreme Court in La Buy v. Howes Leather Company, 352 U.S. 249 [77 S.Ct. 309, 1 L.Ed.2d 290] (1957), protect against any abdication of the decisionmaking responsibility that is properly that of the district courts.

\*    \*    \*    \*    \*    \*

"(2) Magistrates may be assigned to assist the district court in the con-

---

53. Rule 53(b) requires, among other provisions, that "reference to a master shall be the exception and not the rule."

54. S.Rep. 371, 25–27.

duct of pretrial or discovery proceedings in civil or criminal actions. A predecessor provision in S. 3475 would have permitted the district court to delegate to the magistrate 'supervision of the conduct of any pretrial discovery proceeding in a civil or criminal action.' The language in S. 945 makes explicit that the nature of the magistrate's authority when he has been assigned pretrial work is 'assistance to the district court,' thus indicating that the district judge is to retain ultimate responsibility for the conduct of pretrial or discovery proceedings.

"Your committee is aware that certain U. S. district courts, by local rule or practice, require pretrial screening by a designated official in all or most civil cases, and that this practice is thought to provide valuable assistance in sharpening issues, previewing facts, et cetera.

"  .   .   .   [T]he district court for the district of Nebraska has, apparently with great success, designated its clerk to meet with counsel for opposing parties, review pleadings and trial plans in an effort to expedite disposition of a case, and to submit a formal 'report of pretrial' to the appropriate judge. Your committee is also aware, however, that a number of district courts have found great benefit in the plan under which a single district judge is assigned to preside over all proceedings in a case. Subparagraph 636(b) (2) is in no way intended to interfere with district court discretion as to the mode of pretrial or discovery proceedings; instead it is permissive, allowing those district courts which choose to do so to avail themselves, by rule, of the services of U. S. magistrates for assistance in the conduct of pretrial and discovery proceedings.

"(3) Magistrates may also be assigned the function of reviewing and reporting to district judges upon applications for postconviction relief. It is hoped that assignment of this function to magistrates will afford some degree of relief to district judges and their law clerks, who are presently burdened with burgeoning numbers of habeas corpus petitions and applications under 28 U.S.C. § 2255. A qualified, experienced magistrate will, it is hoped, acquire an expertise in examining these applications and summarizing their important contents for the district judge, thereby facilitating his decisions. Law clerks are presently charged with this responsibility by many judges, but judges have noted that the normal 1-year clerkship does not afford law clerks the time or experience necessary to attain real efficiency in handling such applications.

"It seems unwise to your committee to require that the district courts give magistrates duties other than those traditionally performed by commissioners. It is hoped, however, that in their discretion the district courts will find it useful to lighten their own burden in this way.

"If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, your committee believes that there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties, and a consequent benefit to both efficiency and the quality of justice in the Federal courts. Your committee wishes to emphasize that this provision of the act permitting assignments to magistrates cannot be read in derogation of the fundamental responsibility of judges to decide the cases before them; instead it contemplates assignments to magistrates under circumstances where the ultimate decision of the case is reserved to the judge, except in those instances where action can properly be taken by a nonarticle III judge."

When Senator Tydings testified at the House subcommittee hearings on S. 945 in March, 1968, he said that "a district

judge would retain ultimate responsibility for decisionmaking in every instance." [55]

■ Congressional intent is clear that magistrates' civil jurisdiction includes only "such additional duties as are not inconsistent with the Constitution and laws of the United States," [56] that there is to be "no abdication of the decisionmaking responsibility" of district courts, that "the district judge is to retain the ultimate responsibility for the conduct of pretrial or discovery proceedings," and that § 636(b) "cannot be read in derogation of the fundamental responsibility of judges to decide the cases before them." [57]

In the only area where magistrates' jurisdiction was expanded beyond that of commissioners—the trial of minor criminal offenses—Congress painstakingly provided for the prior consent of both defendant and government [58] and for an appeal to the district court.[59]

Even then no one was willing confidently to predict the ultimate constitutionality of the enlarged field of magistrate decision making.

We need not speculate in regard to what civil functions the magistrate can constitutionally perform, however, since Congress carefully intended that in regard to civil cases the magistrate was not empowered to exercise ultimate adjudicating or decision making.[60]

■ We conclude that magistrates have no power to decide motions to dismiss or motions for summary judgment, both of which involve ultimate decision making, and the district courts have no power to delegate such duties to magistrates. We find that the order of reference here was lacking in power and "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." La Buy v. Howes Leather Co.,

55. House Hearings, 73.

56. 28 U.S.C. § 636(b).

57. S.Rep. 371, 25–26. Judge William E. Doyle, then a district judge but now a circuit judge on the Court of Appeals for the Tenth Circuit, is chairman of the Committee to Implement the Federal Magistrates Act of the Judicial Conference of the United States. In "Implementing The Federal Magistrates Act," 39 J.B.A.Kan. 25, 29 (1970), Judge Doyle observed: "A magistrate is limited to the performance of interlocutory activities assigned or authorized by the judges of the district. Final adjudicating is not authorized. The cases make it clear that within the framework of Article III, only the so-called good behavior judges can exercise the ultimate adjudicating responsibilities."

58. Cf. Fed.R.Crim. 23(a): "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

59. The appeal provided in the act (18 U.S.C. § 3402) and in the rule (Rule 8(d) of the Rules of Procedure for the Trial of Minor Offenses, 51 F.R.D. 205) is not a trial de novo but an appeal on the record before the magistrate. Some of the witnesses at the Congressional hearings suggested that constitutionality would be on a firmer basis if a trial de novo were required before the district court. Preliminary Hearings, 234; Senate Hearings, 126. See also Doub & Kestenbaum, "Federal Magistrates for the Trial of Petty Offenses: Need and Constitutionality," 107 U.Pa.L.Rev. 443 (1959).

60. For example, during the House hearings, the following occurred (House Hearings, 83–84, 127):

"Mr. Poff: . . . Section 636(b) treats the possibility of assigning additional duties. . . . We will undoubtedly be asked, is it possible under that authority to give the magistrate himself the power to decide a postconviction case?

"Senator Tydings: I don't see how it is possible to give him permission to decide the case; no.

\* \* \* \* \*

"Mr. Rogers: The answer to the question then would be . . . the only duty that can be performed by the magistrate is to make certain studies and hand them to the judge for his final order in the matter.

\* \* \* \* \*

"Mr. Poff: Would it be broad enough to permit hereafter a magistrate to decide postconviction cases?

"Mr. Finley: I do not believe it would, sir; no."

352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).

## JUDICIAL ADMINISTRATION

The same conclusion reached through the statutory interpretation we have given to the magistrates act is supported by the "supervisory control of the District Courts by the Courts of Appeal . . . necessary to proper judicial administration in the federal system." *La Buy* at 259–260, 77 S.Ct. at 315.

*La Buy* was preceded by a long series of opinions by this court, many of them by Judge Evans, in which a strong policy of decision making by Article III judges was established for the circuit. In the case of In re Volland, 69 F.2d 475, 477 (7th Cir.), modified, 71 F.2d 1022 (1934), Judge Evans held, "The litigants were entitled to have this issue [validity of rezoning] determined by the court rather than by a special master."

In the case of In re Irving-Austin Bldg. Corp., 100 F.2d 574, 577 (7th Cir. 1938), Judge Evans observed, "References to masters are attended by dangerous and unhappy consequences, even when, as here, care is exercised in the selection of the master."

In Adventures in Good Eating, Inc. v. Best Places To Eat, Inc., 131 F.2d 809, 815 (7th Cir. 1942), Judge Evans noted, "Litigants are entitled to a trial by the court, in every suit, save where exceptional circumstances are shown. . . . [T]he litigants prefer, and are entitled to, the decision of the judge of the court before whom the suit is brought. Greater confidence in the outcome of the contest and more respect for the judgment of the court arise when the trial is by the judge." [61]

We recognize that many of the difficulties of the master system have been obviated by the magistrates act. Certainly nothing we say or hold in this opinion has anything to do with the character, ability or qualifications of magistrates, individually or as a class. Nevertheless, the basic policy we have established of adjudication by judges has not been eroded nor diminished, but rather has been supported, by the Congressional intent manifested in the magistrates act. That act commendably upgrades the magistrate system and outlines many areas, principally in regard to preliminary examinations and other aspects of criminal procedure, where the magistrate is indispensable and renders great and valuable assistance to the federal system and to the administration of justice generally.

However, the attempt to delegate actual civil adjudication under the "additional duties" rubric not only contravenes the magistrates act and the express policy of this circuit as stated in the foregoing cases, but it also is of doubtful administrative benefit. For example, a few days after the magistrate's order involved here was entered, the district court in executive session revised its rules to provide for an appeal to the district court (not a *de novo* hearing) from all "final orders" of magistrates.[62] Although there was tes-

---

61. Nor is this circuit alone. In Wilver v. Fisher, 387 F.2d 66, 69 (10th Cir. 1967), the district court referred to a master the supervision of discovery, which led to the master's recommending judgment by default for the plaintiff because of the defendant's failure to answer interrogatories. The court of appeals in reversing said: "The fact that the parties agreed to such anomalous procedure does not make it permissible. . . . The court has control over and responsibility for the discovery procedures authorized by the rules. The order of reference here borders on an abdication of judicial function. . . . "

62. We do not intend to imply by our discussion of this rule that we accept its validity, for, although it is not directly at issue herein, we seriously doubt that the rule is valid. Suffice it here to say that we believe considerable question is raised as to the propriety of the assumption *sua sponte* by the district court of appellate jurisdiction to review "final orders" of magistrates in civil matters when Congress deemed it necessary specifically to grant by statute the analogous jurisdiction to review magistrates' adjudications in criminal cases. *Cf.* 18 U.S.C. §§ 3402.

We do not believe that situations of this kind would be remedied by the magistrate's

timony before Congress that indicated that there were not very many appeals to the district court from commissioners' decisions in petty criminal offenses, this would by no means follow in civil cases where ordinarily the financial stakes are higher and the incidence of indigency lower. If even a modest percentage of civil orders were appealed, the district court would conceivably bear a greater burden than by simply performing its own adjudications.[63]

The Prettyman Committee, finding that the problems created by the difficult and protracted case "might threaten the judicial process itself," recommended principally that the trial judge exercise control over preparations for trial from the time the complaint is filed, including the determination of all preliminary motions.[64] This salutary procedure has been followed in the Northern District of Illinois with great success.[65]

In *La Buy*, the Supreme Court observed that the district judge's "knowledge of the cases at the time of the references, together with his long experience in the antitrust field, points to the conclusion that he could dispose of the litigation with greater dispatch and less effort than anyone else." 352 U.S. at 256, 77 S.Ct. at 313.[66] The handling of the preliminary motion practice by the district judge not only assures a fairer result to the litigants[67] but actually serves to reduce the time spent on the case.[68]

simply recommending to the district judge instead of adjudicating. See Senate Hearings, 235; Kaufman, "Masters in the Federal Courts: Rule 53," 58 Col.L.Rev. 452, 458–61 (1958); Rainha v. Cassidy, 454 F.2d 207 (1st Cir., 1972), (discounts value of "a pro forma laying on of hands by the district court"). Although consent of all parties would change the situation somewhat, it would introduce other difficulties. Representative Cahill said about criminal cases in his dissent to the House report (H.Rep. 1629, 45): "At present the district judge is required to hear all criminal cases. . . . But under the bill a defendant is required to intrude upon a judge's time in order to receive an article III trial." The danger of "coerced consent" is very real.

63. Representative McClory of Illinois stated (House Hearings, 130): "For one thing, I don't like to see the appeal being decided by the person who does the appointing of the magistrate. . . . It seems to me also that we may be inviting more appeals. In order to get the case reviewed by the court of appeals, a person would have to appeal twice. Also, it seems to me that we are imposing on the district courts a new role, a dual role, which is that of serving not only as trial judge but as appellate judges requiring them to receive briefs and decide cases just as appellate courts do."

64. Judge Barrett Prettyman was chairman of the Committee to Study Procedure in Anti-Trust and Other Protracted Cases of the Judicial Conference of the United States. Its report is at 13 F.R.D. 62 (1953). The idea persists to this day.

The first recommendation in the "Manual for Complex and Multidistrict Litigation" (1970) is, "Each complex case should be assigned in its entirety to one judge for all purposes, including all pretrial proceedings."

65. The Senate Committee on the Judiciary said (S.Rep. 371, 26): "Your Committee is also aware, however, that a number of district courts have found great benefit in the plan under which a single judge is assigned to preside over all proceedings in a case. Subparagraph 636(b)(2) is in no way intended to interfere with district court discretion as to the mode of pretrial or discovery proceedings."

66. Judge Duffy said in Krinsley v. United Artists Corp., 235 F.2d 253, 257 (7th Cir. 1956): "The well-reasoned opinion of the trial judge indicated a careful and searching study of the voluminous record before the Master. Had the trial judge himself heard the evidence and then made the same findings and reached the same conclusions, this case could be disposed of here in a very short opinion."

67. Representative Poff of Virginia said on the floor of the House, "Thus the test of this legislation is not whether a magistrate is a Federal judge but whether the parties are being treated unfairly." 114 Cong. Rec. 27352.

68. Roland S. Homet, Jr., a Washington, D.C. attorney and former law clerk to Mr. Justice Frankfurter, testified (Senate Hearings, 188): "The 'motion practice' associated with [civil cases] served to educate the judge about the issues in the

■ Although we are reluctant, as the court was in *La Buy*,[69] to make use of the drastic remedy of mandamus, we believe that this case presents a situation where an appeal from a final judgment would provide a wholly inadequate remedy. In accordance with the views expressed herein, we direct that the writ issue directing respondent to vacate the order of reference and the magistrate's resultant order and directing that this cause continue in due course before the district court.

trial he is to hear, and often leads to settlement pressures which would be far less persuasive if a different judicial officer were known to be presiding at the trial." Former Chief Judge Campbell of the Northern District of Illinois was quoted at the hearings (Senate Hearings, 69) : "I do not think that the hearing of a lawsuit by anyone other than the judge helps in any way toward the prompt dispatch of judicial business."

69. *Howes Leather Co. v. La Buy*, 226 F. 2d 703, 711 (7th Cir. 1955).