Ulys **INGRAM**, Plaintiff-Appellant,

v.

Elliot L. **RICHARDSON**, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 72–1353.

United States Court of Appeals, Sixth Circuit.

Dec. 7, 1972.

William A. Watson, Middlesboro, Ky., Watson & Watson, Middlesboro, Ky., on brief, for plaintiff-appellant.

Robert M. Murphy, Asst. U. S. Atty., Lexington, Ky., for defendant-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before WEICK, PECK and MILLER, Circuit Judges.

WEICK, Circuit Judge.

This is an appeal from the District Court's order which denied appellant's objections to the Report and Recommended Decision of the United States Magistrate, adopted the Magistrate's findings of fact and conclusions of law, and entered summary judgment in favor of the defendant in a proceeding brought to review the Secretary's denial of Social Security disability insurance benefits to the plaintiff-appellant, Ulys Ingram.

Ingram has not worked since May, 1964, and had been receiving public assistance benefits until he applied for Social Security benefits; he receives food stamps.

On December 9, 1964, Ingram filed his application with the Secretary of Health, Education and Welfare, to establish a period of disability, which application was denied. He was then given a hearing before a Hearing Examiner who denied his claim on June 30, 1965, and the Appeals Council declined to review the Examiner on September 29, 1966.

Ingram filed his complaint in the District Court to review the decision of the Secretary, on November 28, 1966. There the case remained until January 7, 1969, when the District Court, upon motion of Ingram, remanded it to the Secretary for further administrative action. That action was taken by the Appeals Council, and the Council made its report on June 10, 1969, which report was sent to the District Court.

On December 23, 1971, the Magistrate's Report and Recommended Decision was filed. A copy of the report, received by Ingram, was his only notice of the reference to the Magistrate, accord-

ing to Ingram's counsel.[1] Appellee's counsel advised us that all Social Security disability cases are now referred to the Magistrate, and we are informed that there are many of them.

Ingram filed objections to the report, which were denied by the Court on January 7, 1972.

█ Appellant has raised no question in this Court as to the propriety of the reference to the Magistrate, but we conceive it to be our duty to notice and pass upon obvious irregularities appearing on the face of the record.

28 U.S.C. § 636, which provides for jurisdiction and powers of Magistrates, expressly authorizes:

"(1) service as a special master in an appropriate civil action, pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts; . . ."

Rule 53(b) of the Federal Rules of Civil Procedure provides:

"(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it."

The leading case on the subject of reference to a Master under Rules 53(b), is LaBuy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), which involved two large and complex antitrust lawsuits under the Sherman Act and the Robinson-Patman Act. Eighty-seven retailers sued six manufacturers and distributors of shoe repair supplies. The case had taken a long time to prepare for trial, and the trial was expected to last at least six weeks. District Judge LaBuy, on his own motion, referred the case to a Master. One of the reasons given by Judge LaBuy for the reference was his congested court calendar. The Court of Appeals for the Seventh Circuit issued writs of mandamus compelling Judge LaBuy to vacate his orders of reference, and held that no exceptional circumstances within the meaning of Rule 53(b) permitting a reference, were present. The Supreme Court upheld the Seventh Circuit.

The Supreme Court held that the antitrust cases before Judge LaBuy should not have been referred to a Master. The Court specifically addressed itself to the question of congestion as a reason for reference of a case to a Master. "[C]ongestion in itself is not such an exceptional circumstance as to warrant a reference to a master." 352 U.S. 249, 259, 77 S.Ct. 309, 315 (1957). Speaking for the Court, Mr. Justice Clark stated that if congestion were a basis for reference to a Master, then "present congestion would make reference the rule rather than the exception." 352 U. S. at 259, 77 S.Ct. at 315. The Court further rejected the view that complexity of the antitrust suit which Judge LaBuy referred to a Master was an appropriate basis for reference. However, no one here contends that the appellant's case was complex. The only apparent basis for the reference to a Magistrate appears to be congestion of the docket.

The Supreme Court found in *LaBuy* that the orders of reference "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." 352 U.S. at 256, 77 S.Ct. at 313. Similarly, here, it would appear that there has been a delegation of the judicial function to a Magistrate, which was not authorized by statute.

---

[1]. No order of reference appears in the appendix; it must have been made verbally. A formal order of reference should have been made to authorize the Magistrate to act, and so as to afford the litigants an opportunity to object to the reference. A Magistrate is not an Article III court.

The Supreme Court quoted the following language from Adventures in Good Eating, Inc. v. Best Places to Eat, Inc., 131 F.2d 809, 815 (7th Cir. 1942):

"Litigants are entitled to a trial by the court, in every suit, save where exceptional circumstances are shown." [2]

In 9 Wright, Federal Practice and Procedure, 789–790, it is stated that beyond matters of account, damages, and supervision of discovery, "it is difficult to conceive of a reference of a nonjury case that will meet the rigid standard of the *LaBuy* decision."

Crowded court calendars may be a problem in the United States District Court for the Eastern District of Kentucky. Reference of cases to Magistrates, however, is not the proper solution of the problem. The proper solution of a crowded docket rests with the Congress. District Courts, of course, can do much and, as pointed out in *La-Buy,* have done much, to relieve crowded dockets by sound judicial administration and enlightened procedural techniques (352 U.S. at 259, 77 S.Ct. 309); but the problem of a crowded docket must not be allowed to close the door to a litigant who has a statutory right of review by a court. 42 U.S.C. § 405(g). Nor should Social Security disability insurance cases be singled out and referred to a Magistrate for disposition, while other civil actions are not so referred.

42 U.S.C. § 405(h) provides:

"No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided."

It is the Secretary, and not a Magistrate or a District Court, who adopts findings of fact. 42 U.S.C. § 405(g) provides:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ."

Thus the function of the District Court is only to determine whether the findings and decision of the Secretary are supported by substantial evidence. O'Brien v. Finch, 415 F.2d 802 (5th Cir. 1969).

It would place a greater burden upon the appellant here if he is required to overturn not only findings of fact of the Secretary, but also findings of the Magistrate which have been adopted by the District Court.

It is not our understanding that all civil cases in the Eastern District of Kentucky are as old as the present case before they are reached for trial. Since the function of the District Court is only to determine whether the decision of the Secretary is supported by substantial evidence, these cases could be briefed, argued and decided long before other civil cases are at issue particularly

2. In TPO, Inc. v. McMillen, 460 F.2d 348 (7th Cir. 1972), the Court held that magistrates have no power, under the Magistrates Act to decide motions to dismiss or motions for summary judgment, and district judges have no power to delegate such duties to magistrates. The Court granted a writ of mandamus nullifying the assignment of the case to the magistrate.

In discussing the legislative history of the Magistrates Act, the Court quoted from the Senate Judiciary Committee report the following language relating to the assignment of a magistrate to serve as a special master:

"(1) A magistrate may be assigned to serve as a special master in an appropriate civil action, under the conditions imposed by pertinent provisions of Federal Rules of Civil Procedure. This latter requirement was added as a clar-

ification in response to comments made by the Committee on the Administration of the Criminal Law of the Judicial Conference. In particular, rule 53(b) provides that a reference to a master shall be the exception and not the rule; that in actions tried by a jury a reference shall be made only when the issues are complicated; and that in actions tried without a jury, save in matters of account, a reference shall be made only upon a showing that exceptional circumstances require it. These conditions, which in essence reflect the rule laid down by the Supreme Court in LaBuy v. Howes Leather Company, 352 U.S. 249 [77 S.Ct. 309, 1 L.Ed.2d 290] (1957), protect against any abdication of the decisionmaking responsibility that is properly that of the district courts." (460 F.2d at 357)

where discovery or other protracted proceedings are conducted. Social Security disability cases usually involve poor persons who are receiving public assistance, and there is no good reason why their cases should be shunted in favor of other civil actions. It was error for the District Court to refer the case to the magistrate.

## IS THE DECISION OF THE SECRETARY SUPPORTED BY SUBSTANTIAL EVIDENCE?

Claimant was a male, 53 years old, who lived with his wife and five of his children (under 18 years of age) in a small four-room house that had no bath; the house was located on Route 2, Middlesboro, Kentucky. He was 5 feet 11 inches tall and weighed about 140 pounds. He had a sixth grade education and was able to read and write. After leaving school claimant worked as a laborer in construction, mining, and carpentry. His earnings requirement under Social Security Act was met prior to his claimed disability on May 23, 1964, and extended through September 30, 1964. It was therefore necessary for him to prove that he was under disability as defined by the Act prior to October 1, 1964.

Claimant's physician, Dr. J. C. Ausmus, Jr., who attended him regularly twice a month, reported in writing on September 3, 1964, that Ingram became disabled on March 7, 1964. Dr. Ausmus' diagnosis was:

"1 Diaphramatic pleuritis on the right side.

2 Chronic bronchitis severe.

3 Peptic ulcer.

4 Degenerative arthritis hands, ankles, knees.

5 Psychoneurosis."

He had "severe constant chest pain in right lower lobe aggravated by motion and activity." In his report Dr. Ausmus further stated:

"Mr. Ingram at this time is suffering from a temporary total disability. Whether he can be returned to work depends upon his response to therapy which will require approximately another 6 months."

The period of temporary total disability, according to Dr. Ausmus, was at least one year, but subsequent evidence is to the effect that it has continued and now is total and permanent. It is clear that the disability was covered by Sections 216(i) and 223(c) of the Social Security Amendments of 1965. 42 U.S.C. §§ 416(i) and 423.

In a report of contact by a Field Representative, dated December 9, 1964, it is stated that at the time of the interview Ingram "seems quite depressed."

Ingram was subsequently examined in January, 1965, by Dr. Kenneth W. Smith, at the Clinic of the Appalachian Regional Hospital. Dr. Smith found Ingram had an enlarged prostate; and further gave his impressions as:

"(1) History very suggestive of chronic duodenal ulcer and hiatal hernia.

(2) Probable early pulmonary emphysema with mild chronic bronchitis (related to patient's smoking and past work in mines.)

(3) *Neurotic personality*" (emphasis added).

It is interesting to note that Dr. Smith found evidence of neurosis, while Dr. Ausmus previously diagnosed psychoneurosis. Dr. Ausmus filed another report on the letterhead of The Cumberland Clinic, dated May 7, 1965. After reciting his previous diagnosis, Dr. Ausmus stated:

"Mr. Ingram was assigned a temporary total disability. Its permanency depended upon his response to therapy. Since the instituted therapy Mr. Ingram has followed his course of treatment very faithfully and it is now determined that these conditions are of a permanent nature and he is suffering from a total and permanent disability."

Ingram was examined for the Secretary on August 13, 1965, by Charles L.

Kirkpatrick of the Daniel Boone Clinic, who reported:

"Rheumatoid arthritis is believed not present. Patient may have chronic bronchitis and lumbar spine arthritis. Angina is not suspected. He states he can do no work because of stomach trouble and backache."

It will be noted that Dr. Kirkpatrick merely reported on physical ailments and said nothing about Ingram's neurosis and gave no opinion as to disability. It is not understandable why, in view of the reports of Doctors Ausmus and Smith concerning "psychoneurosis" and "neurotic personality," the Secretary did not have Ingram examined by a psychiatrist, particularly if he had any question about the neurosis.

Another Field Representative made contact with Ingram and reported on August 16, 1965, that Ingram "did seem to be very depressed. . . ."

On May 6, 1966, Ingram was examined by Dr. William L. Patterson, an orthopedic surgeon, who found that he was a fairly thin individual with an increased dorsal kyphosis and noted that on standing he elevated his left pelvis ¼ to ⅜ inch with a slight compensatory left scoliosis and no disturbance of his gait. He found only moderate degenerative osteoarthritic changes in the lumbar spine with mild arthritic spur formation at the superlateral margin of the mid-lumbar vertebrae. The arthritis appeared to be of long standing. It was his impression that Ingram has a low grade chronic left trochanteric bursitis secondary to a leg length discrepancy. He suggested a slight build-up on his right heel and sole. He agreed it would be advantageous "to have Dr. George L. Gee evaluate him from a psychiatric standpoint."

Subsequently Ingram was examined for the Division of Disability Determinations by Dr. George L. Gee, Jr., a psychiatrist associated with Psychiatric Services, who made a written report under date of May 12, 1966, which was in part as follows:

"Diagnostic impression is that of a psychoneurotic reaction aggravated in the involutional period in an individual who has lapsed into invalidism and dependency. He is mentally competent, not overtly psychotic, and could receive benefits in his own name if granted. Functional impairment moderate plus. Long term prognosis guarded. Theoretically he could be seen by Vocational Rehabilitation and have a program of outpatient psychiatric treatment plus medication but he has not worked for two years and actually has not done much for about three years. He mentions ulcers, heart trouble, arthritis, lack of energy, and a feeling that he will never work again, and all this plus his age would certainly make one question whether a rehabilitation program could make him a productive individual."

A Sheldon Gelburd, Ph.D., a clinical psychologist associated with Psychiatric Services, reported:

"In summary, this man appears to be a chronic neurotic, characterized by feelings of helplessness, having lapsed into dependency, somatizing conflicts, and general regressing. He appears to be a poor to guarded rehabilitation prospect and this examiner would be surprised if he could adjust to a job, however simple. If he is to adjust to any kind of task, it is felt it would have to be a well structured one requiring the minimum of physical effort."

Ingram was examined on May 3, 1966, by Dr. William F. Gallivan, an orthopedic surgeon, who reported that he could find no disc injury or significant arthritic changes. His impression was chronic low back strain associated with postural error.

Dr. George L. Gee, Jr. made another report dated February 11, 1969, in which he stated:

"I still adhere to the original diagnosis given of a psychoneurotic reaction aggravated in the involutional pe-

riod and lapsed into invalidism and dependency. His depression is more obvious than two years ago and there is great somatization present. Inasmuch as he hasn't worked since 1964, I consider this individual totally and permanently disabled, and I don't think there is any feasible therapy that would restore him to a productive role in life."

The hearing examiner considered all of the medical evidence except the second report of Dr. Gee, which was made available to the Appeals Council upon the remand. He gave no consideration to the reports of Ingram's attending physician, Dr. Ausmus. He thought that the degree of psychoneurosis was not significant. He did state, however:

"What is more, it does not appear that claimant's psychiatric condition should improve with rehabilitation type of training and treatment."

He made findings as follows:

"(1) The claimant's impairments are chronic bronchitis, mild; mild degenerative arthritis of low back or chronic low back strain associated with a postural error; and a psychoneurotic reaction aggravated in the involutional period.

"(2) The impairments as shown in (1) are not sufficiently severe to preclude the claimant from performing the types of substantial gainful activity that he has previously performed.

"(3) The claimant's chief impairment of psychoneurosis has not severely incapacitated him either socially or industrially.

"(4) The claimant has the capabilities of performing the types of work that he previously performed, carpentry, watchman, drill press operator and similar types of work.

"(5) The evidence fails to establish that the claimant's impairments precluded him from engaging in substantial gainful activity at any time prior to the date of this decision.

"(6) The claimant is not under a disability as defined in the Act, either prior to or after the Social Security Amendments of 1965, at any time prior to the issuance of this decision."

■ In our opinion, other than (1) above, which is incomplete, these findings, which the Appeals Council initially declined to review, are not supported by substantial evidence. Neither are the subsequent findings of the Appeals Council, made after the remand, supported by substantial evidence.

The Appeals Council treated the diagnoses in the two reports of the psychiatrist, Dr. Gee, as containing conclusions. It similarly cast aside the medical report of Dr. Ausmus because it "contains conclusions similar to those previously furnished by him in Exhibits 14 and 31." It will be recalled that one of the original diagnoses of the attending physician, Dr. Ausmus, made on September 2, 1964, was psychoneurosis. He also found temporary total disability. Dr. Ausmus' second report confirmed his original diagnosis, but stated that Ingram's disability was then total and permanent. Dr. Kenneth W. Smith found a "neurotic personality." Dr. Gee in his first report found "psychoneurotic reaction aggravated in the involutional period in an individual who has lapsed into invalidism and dependency." He questioned "whether a rehabilitation program could make him a productive individual." In his 1969 report Dr. Gee adhered to his initial diagnosis and stated that Ingram was "totally and permanently disabled, and I don't think there is any feasible therapy that would restore him to a productive role in life."

There was no contradiction in the record of the opinions of Doctors Ausmus, Smith, and Gee, and that of the psychologist Dr. Gelburd.

All of the medical opinions concerning the nature and extent of disability were treated by the Appeals Council as "conclusions."

The Magistrate fell into the same error. He treats the initial report of Dr. Ausmus as indicating "a bare, unsupported diagnosis of 'psychoneurosis'",

and the report of Dr. Smith is treated in the same fashion.

The Magistrate, however, gives more reverence to the report of Dr. Gee than did the Appeals Council. As to Dr. Gee's report, he states:

"The medical evidence in the report indicates that, while the plaintiff's physical impairments are not disabling, he suffers from a 'psychoneurotic reaction aggravated in the involutional period' which is apparently quite disabling."

Continuing, the Magistrate stated:

"As is manifest by the foregoing summary of the medical evidence in the record, the plaintiff has established that he has suffered from a continuum of mental disorder, probably since 1964, and by 1966 his condition was disabling. However the record is simply devoid of any suggestion as to the disabling nature of the plaintiff's condition as early as 1964, and any conclusion, on the basis of the record, that the plaintiff's condition was disabling on or before September 30, 1964, would be nothing more than speculation."

■ It is submitted that the conclusions of the Magistrate are not supported by his findings.

Contrary to the Magistrate's statement, the record is not devoid of any suggestion as to the disabling nature of claimant's condition as early as 1964, for it is contained in the initial and uncontradicted report of Ingram's attending physician, Dr. Ausmus, who diagnosed one of his ailments as psychoneurosis and also reported that he had a temporary total disability. It was not sheer speculation.

■ Contrary to the rulings of the Appeals Council · and the Magistrate, medical experts may give their opinions as to the nature and extent of the ailments of a claimant, whether temporary or permanent, their treatment and prognosis. Hall v. Celebrezze, 314 F.2d 686 (6th Cir. 1963). This rule applies also to mental disorders. Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967).

■ The testimony of the vocational expert has no weight in view of the uncontradicted testimony of the attending physician and other experts as to the extent of Ingram's disability.

The judgment of the District Court is reversed and the cause is remanded to the Secretary, with instructions to allow the claim.