802 F.2d 460
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Virginia STEAD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-1668.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1986.
 
 Before LIVELY, Chief Judge, MILBURN, Circuit Judge, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This appeal stems from the Secretary's denial of appellant Virginia Stead's claim for disability insurance benefits. Stead received disability benefits from October 10, 1976, to August 1978, when her disability due tomultiple endocrine adenoma I (MEA I) was determined to have ceased. Stead filed another claim on April 4, 1983, alleging that she had been disabled since November 1978 due to MEA I and a heart condition. Because March 31, 1982, was the last date of her insured, eligible status, Stead had to prove that her disability began on or before that date. After initial denial and denial upon reconsideration, Stead's claim was heard by an administrative law judge. The ALJ found that there was no clinical evidence that Stead had a severe heart impairment prior to or on March 31, 1982, the Appeals Council affirmed, as did the district court, which adopted the magistrate's recommendation that Stead was not disabled prior to March 31, 1982. This appeal was perfected from that order.
 
 
 2
 Evidence introduced at the administrative hearing in February, 1984, established that Stead was fifty years old at that time, had a tenth grade education, and last worked in 1976 as a housekeeper in a nursing home. She stopped working there in 1976 due to MEA I. Her medical history disclosed that in 1977, during treatment for the rare disorder, MEA I, Stead underwent a partial parathyroidectomy, total gastrectomy, partial pancreatectomy, left adrenolectomy, and splenectomy.
 
 
 3
 A subsequent examination in August of 1978 noted Stead's subjective complaints of fatigue and weakness but concluded that no indications of totally disabling disease were present, and as a result of this report her original disability benefits were terminated. A month later, another doctor, who had treated her for the MEA I syndrome, found Stead to have an elevated gastrin level, which he stated could possibly come either from a duodenum or cancer. He found her to have a low energy level and swelling of her right lower leg, which he considered to be a residual symptom from a previous blood clot, and stated that in his opinion these factors would hinder her ability to work full-time. The record further establishes that during the next six years Stead underwent a series of examinations and medical procedures, and one of the physicians involved expressed the opinion that, "Her present underlying state would not make it possible for her to be employed in any gainful activity for .... " A vocational expert testified that giving full credibility to Stead's testimony, no jobs existed which she could have performed prior to March, 1982.
 
 
 4
 Routinely, the issue presented in such cases is whether substantial evidence in the record supports the Secretary's decision. See, 42 U.S.C. Sec. 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Gibson v. Secretary, 678 F.2d 653 (6th Cir. 1982). More specifically, in the present case the issue is whether the record contains substantial evidence supporting the Secretary's finding that no disability existed prior to or on March 2, 1982. In this circuit, a four step process for establishing disability has been ordained in Kirk v. Secretary of Health & Human Services, 667 F.2d 524 (6th Cir. 1981).
 
 
 5
 First, her statement that she was not gainfully employed prior to March, 1982 stands uncontroverted. Dr. Piesko's testimony supports a finding that she had a severe impairment, i.e. one that significantly limited her ability to perform work-related functions, prior to that date. He was the only doctor asked about the severity of her condition in December 1981, and he affirmed its seriousness. Dr. Piesko stated that her heart condition would have begun as far back as 1980, due to changes which he saw in her electrocardiogram pattern. When asked about the severity of the condition in December 1981, assuming that she had chest pains then, Dr. Piesko responded that he believed "that the disease process became quite extensive certainly in 1980 as visualized by changes seen on EKG in my office records." He added that of all the disability patients he had treated, Stead's problem ranked in the upper one pereent of severity. The third step of the Kirk test is satisfied by the fact that such severe impairment meets the List of Impairments in the regulations, and she should have been found disabled on the basis of such medical evidence. As to the fourth step, the uncontroverted evidence establishing Stead's weakness and fatigue due to surgeries and disease, which resulted in her inability to perform substantial gainful employment, established that she was precluded from undertaking such employment.
 
 
 6
 To be entitled to benefits, a claimant must establish that disability had existed from or before the date of her last insured status, see Henry v. Gardner, 381 F.2d 191 (6th Cir.), cert. denied, 389 U.S. 993 (1967), but such disability may be shown by medical evidence acquired after the expiration of the insured status. Ingram v. Richardson 471 F.2d 1268 (6th Cir. 1972), wherein the doctor diagnosed temporary total disability during the insured period and after the insured period determined it was permanent. See also Basinger v. Heckler, 725 F.2d 1166 (8th Cir. 1984).
 
 
 7
 In Watson v. Gardner, 381 F.2d 580 (6th Cir. 1979), we held that where the testimony of a physician was not contradicted by evidence submitted by the Secretary, "a contrary finding by the ALJ is ... speculation and reversible error .... " We similarly conclude that in the present case Dr. Piesko's testimony concerning the existence of impairment and disability prior to March, 1982 stood uncontroverted on the record and that the conclusion of the ALJ to the contrary constituted the "speculation and reversible error."
 
 
 8
 The judgment of the district court is vacated and the cause is remanded with instructions to grant benefits.