**In re UNITED STATES of America, Petitioner.**

No. 86–3474.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1987.

Decided April 8, 1987.

F. Henry Habicht, II, Asst. Atty. Gen. Jacques B. Gelin, Patricia Gail Littlefield, David C. Shilton, Albert M. Ferlo, Jr., Attys., Dept. of Justice, Washington, D.C., Peter R. Steenland, Jr. (argued), Steven D. Bell, Asst. U.S. Atty., Cleveland, Ohio, Jonathan McPhee, U.S. E.P.A., Region V, Chicago, Ill., Helen Keplinger, Office of Enforcement & Compliance, Washington, D.C., for appellee.

William P. Bobulsky, Ashtabula, Ohio, for Laskin & Poplar.

Robert M. McNair, Robert M. McNair Co., LPA, Jefferson, Ohio, Michael L. Hardy, Thompson, Hine and Flory, Cleveland, Ohio, for Warren.

Thomas P. Meaney, Jr., Cleveland, Ohio, for Schlumberger.

Cornelius C. Smith, Jr., Danbury, Conn., Karen B. Newborn, Baker & Hostetler, Cleveland, Ohio, for Union Carbide.

Louis Tosi, Fuller & Henry, Toledo, Ohio, for General Motors.

Clay Mock, Arter & Hadden, Cleveland, Ohio, for Be-Kan.

Thomas Sivak, Environmental Counsel, Pittsburgh, Pa., for Koppers.

William Smith, Calfee, Halter & Griswold, Cleveland, Ohio, for Union Carbide.

Jeffrey G. Miller, Thomas Hays, Verner, Liipfert, Bernhard, McPherson and Hand, Washington, D.C., for other respondents.

Michael L. Hardy, Thompson, Hine and Flory, Cleveland, Ohio, for Rockwell.

W. Mowry Connelly, Michael T. McMenamin, Marcia E. Hurt, Walter, Haverfield, Buescher & Chockly, Maureen Brennan, Environmental Counsel, Cleveland, Ohio, for TRW.

Before MERRITT and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

The United States of America petitions this court to issue a writ of mandamus directing the United States District Court for the Northern District of Ohio to limit its order of reference to a special master, in the underlying action, to discovery and other procedural, nondispositive matters.

The government contends that the district court abused its discretion under Federal Rule of Civil Procedure 53(b) in authorizing a special master to review and submit recommendations on motions for summary judgment and other potentially dispositive motions. For the reasons set forth below, we will grant the government's petition.

## I.

The United States instituted the underlying action on June 22, 1984, under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking the recovery of past preliminary cleanup costs incurred at a hazardous waste site in Ohio. On March 8, 1985, the district court issued an order which in effect stayed the proceedings pending settlement negotiations. In April and May of 1985, "a continuously more frustrated Court learned that the settlement abyss between the parties seemed to be widening rather than narrowing." In its order of June 24, 1985, the court determined that there would be "one last effort to avoid the extraordinarily expensive, time-consuming, and burdensome litigation which may well be inevitable." Accordingly, the court ordered the parties to submit a joint stipulated agreement in the form of a proposed case management order by July 12, 1985. The court warned that if no proposed case management order was submitted by that date, the court would "hear reasons that a special master should not be appointed."

On July 12, 1985, counsel for the government informed the district court that the parties had been unable to agree on a case management order. The government further submitted that it would be inappropriate to refer the case to a special master. On September 13, 1985, the district court granted the government's motion to voluntarily dismiss, without prejudice, its request for declaratory judgment. Further, the district court ordered that it would appoint a special master, holding:

The representations of the parties regarding the complexity and volume this case is likely to achieve, as well as the Court's independent examination of the pleadings have convinced the Court that "exceptional conditions" require a reference to a special master. Fed.R.Civ.P. 53. Accordingly, the Court shall appoint a special master, to be paid by the parties, to hear evidence, make findings of fact, propose conclusions of law, handle discovery, and supervise this case in every other way permissible by the Federal Rules and the United States Code.

Joint Appendix at 40–41.

On September 23, 1985, the government filed a response arguing that the record did not reveal the existence of "exceptional circumstances" sufficient to warrant reference to a special master under Rule 53(b). The government further stated that, notwithstanding its general opposition to a reference, it would concede to a limited reference of discovery matters to a special master.

On January 2, 1986, the court appointed a special master, providing her with the authority to, among other things, "submit recommendations on all motions filed in this action after ordering sufficient briefing and an oral hearing, if necessary." On January 14, 1986, the court granted a stay of the implementation of its January 2, 1986 order to allow the parties to brief their objections thereto. On January 27, 1986, the government filed a memorandum contending that the court erred in granting the special master authority to submit recommendations on all motions. The government also contested the validity of the reference in its entirety, as well as the court's requirement that the government pay one-half of the special master's fees.[1]

On March 31, 1986, the district court issued an order lifting the stay imposed on January 14, 1986, and rejecting the government's arguments in opposition to the reference, reasoning:

---

**1.** While the government does not raise these issues in the present petition, it reserves the right to raise them on appeal.

The government's most serious challenge is to the Court's authority to appoint a Master in this case at all. Still, the cases cited by the government in no way address the instant case in which the defendants have stated their intention to add at least 264 additional parties and in which the challenged order of reference deals *only* with pretrial matters. This case will require constant, daily monitoring to guarantee efficient management.

It is not calendar congestion, complexity of the issues, or the possibility of a lengthy trial which resulted in the Court's order of reference. *See LaBuy v. Howes Leather Co.*, 352 U.S. 249 [77 S.Ct. 309, 1 L.Ed.2d 290] (1957). It is factors like these *combined* with the extraordinary pretrial management which will be required in a case with more than 250 parties and the public interest in the quickest feasible resolution of Superfund cases which weigh in favor of the appointment of a Special Master. *See United States v. Conservation Chemical Company*, 106 F.R.D. 210, 219 (W.D.Mo. 1985), and cases cited therein. The Eighth Circuit has explicitly recognized the propriety of pre-trial supervision by a Special Master in a complex CERCLA case. *In Re: Armco, Inc., et al.*, 85–1598 [774 F.2d 1170] (8th Cir. July 18, 1985).

Joint Appendix at 50–51 (emphasis in original). The district court subsequently granted the government's motion to delay the initial meeting with the special master.

On May 28, 1986, the government filed the present petition pursuant to the All Writs Act, 28 U.S.C. § 1651(a).[2] On June 9, 1986, a panel of this court issued an order requesting the district judge to file a response. The district judge thereafter informed the court by letter that he did not wish to appear or file a response and that he would rely on his orders filed in the district court. None of the defendants filed a brief or participated in oral argument.

## II.

At the outset, we note that mandamus is an accepted means to challenge a district court's order referring matters to a special master under Rule 53. *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (affirming circuit court's order issuing writ of mandamus compelling district court to vacate orders of reference). It is within "the sound discretion of the court" to grant or withhold the writ if it finds that "exceptional circumstances ... warrant the use of the extraordinary remedy of mandamus." *Id.* at 255, 256, 77 S.Ct. at 313 (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)).

Our standard of review of the district court's action is whether "the orders of reference were an abuse of the [district court's] power under Rule 53(b)." *La Buy*, 352 U.S. at 256, 77 S.Ct. at 313, *see also Bradshaw v. Thompson*, 454 F.2d 75, 80 (6th Cir.) ("The decision to appoint a master whose function is to aid the judge in the performance of specific judicial duties, is within the discretion of the District Court."), *cert. denied*, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972).

Fed.R.Civ.P. 53(b) provides:

A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it. Upon the consent of the parties, a magistrate may be designated to serve as a special master without regard to the provisions of this subdivision.

Because the underlying action in the present case is to be tried to the court and

---

**2.** Section 1651(a) provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

since the reference is of matters other than account or difficult computation of damages, the reference must be supported by a showing of "some exceptional condition." *See, e.g., Jack Walters & Sons Corp. v. Morton Building, Inc.,* 737 F.2d 698, 712 (7th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984). The leading case addressing this issue is the Supreme Court's opinion in *La Buy, supra.* The Rule 53(b) controversy in *La Buy* arose out of two antitrust actions instituted in the district court, involving some ninety-three plaintiffs and twelve defendants. The district court's *sua sponte* orders of reference authorized the special master "to take evidence and to report the same to this Court, together with his findings of fact and conclusions of law." 352 U.S. at 253, 77 S.Ct. at 312. In support of the reference, the district court asserted " 'that the cases were very complicated and complex, that they would take considerable time to try,' and that his 'calendar was congested.' " *Id.* at 254, 77 S.Ct. at 312.

In affirming the Seventh Circuit's issuance of the writ of mandamus vacating the order of reference, the Supreme Court stated:

> [C]ongestion in itself is not such an exceptional circumstance as to warrant a reference to a master. If such were the test, present congestion would make references the rule rather than the exception. Petitioner realizes this, for in addition to calendar congestion he alleges that the cases referred had unusual complexity of issues of both fact and law. But most litigation in the antitrust field is complex. It does not follow that antitrust litigants are not entitled to a trial before a court. On the contrary, we believe that this is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work. Nor does petitioner's claim of the great length of time these

trials will require offer exceptional grounds.

*Id.* at 259, 77 S.Ct. at 315.

Commentators have observed that *La Buy* severely restricts the circumstances in which a reference will be proper in a nonjury case:

> Though the [*La Buy* ] Court was silent about what does constitute an exceptional condition, its rejection of the three most obvious matters claimed to constitute such a condition justifies the observation of Judge Kaufman that
>
> > the utilization of special masters to hear and report on the main issues in litigation under Rule 53 has little support in the non-jury area. With a few minor exceptions, references in nonjury cases run counter to the spirit and purpose of judicial administration in the federal courts.
>
> Even before the *La Buy* case courts frequently held that there was no exceptional condition justifying a reference, and they have done so much more consistently since that decision. A reference is still proper on matters of account and of damages.
>
> The use of a special master to supervise discovery may still be appropriate and useful in unusual cases.
>
> Beyond the situations just described it is difficult to conceive of a reference of a nonjury case that will meet the rigid standard of the La Buy decision. This restrictive policy is necessary because reference of a nonjury case not only involves expense and delay but, since the master's findings must be accepted unless they are clearly erroneous, it also involves the danger that the master, not the court, will in fact decide the case.

9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2605 (1971), at 789–91 (footnotes omitted) (quoting Kaufman, *Masters in the Federal Courts: Rule 53,* 58 Colum.L.Rev. 452, 459 (1958)). *See also Ingram v. Richardson,* 471 F.2d 1268, 1271 (6th Cir.1972) (quoting Wright and Miller with approval in holding that reference to magistrate under Rule 53(b) was improper).[3]

---

3. In *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976), the Supreme Court

In the present case, the district court articulated five reasons to support its conclusion that exceptional conditions warranted the reference to the special master: (1) calendar congestion; (2) complexity of the issues; (3) possibility of a lengthy trial; (4) the extraordinary pretrial management required in a case with more than 250 parties; and (5) the public interest in the quickest feasible resolution of Superfund cases.

In *La Buy*, the Supreme Court rejected the first three reasons advanced by the district court in the present case. The Court stated that "congestion in itself is not such an exceptional circumstance as to warrant reference to a master. If such were the test, present congestion would make references the rule rather than the exception." 352 U.S. at 259, 77 S.Ct. at 315. *See also Ingram*, 471 F.2d at 1271 ("Reference of cases ... is not the proper solution of the problem [of crowded court calendars]. The proper solution of a crowded docket rests with the Congress.... [T]he problem of a crowded docket must not be allowed to close the door to a litigant who has a statutory right of review by a court.").

As to the complexity of the issues, the *La Buy* Court stated, "On the contrary, we believe that this is an impelling reason for trial before a regular, experienced trial judge. rather than before a temporary substitute appointed on an *ad hoc* basis and ordinarily not experienced in judicial work." 352 U.S. at 259, 77 S.Ct. at 315. The Court continued, "Nor does petitioner's claim of the great length of time these trials will require offer exceptional grounds." *Id.*

Recognizing that *La Buy* rejects these reasons, the district court added that it is "factors like these *combined* with the extraordinary pretrial management which will be required ... and the public interest in the quickest feasible resolution of Super-

fund cases which weigh in favor of the appointment of a Special Master." (emphasis in original). Turning first to the interest in a quick resolution of the case, we believe this factor counsels *against* referring dispositive motions to a special master. The reference of such matters may well actually increase the length of time necessary to resolve the issues. As the government notes, both the district court's order and Rule 53(e)(2) [4] require the district court to review the special master's recommendations and reject any findings of fact that are clearly erroneous. *See Day v. Wayne County Board of Auditors*, 749 F.2d 1199, 1201–02 (6th Cir.1984). Thus, the dispositive motions will in all probability have to be briefed and argued twice: first for the special master and then again for ultimate resolution by the district court. Moreover, as the government also observes, the reference of dispositive motions will not reduce significantly the court's overall involvement with those issues as the district judge will have to familiarize himself with the same facts and law upon which the special master bases her determinations.

That references often delay the resolution of cases is well recognized in the case law and by the commentators. The *La Buy* Court, for example, noted the following commentary by former New Jersey Supreme Court Chief Justice Vanderbilt in *Cases and Materials on Modern Procedure and Judicial Administration* 1240–41 (1952):

"There is one special cause of delay in getting cases on for trial that must be singled out for particular condemnation, the all-too-prevalent habit of sending matters to a reference. There is no more effective way of putting a case to sleep for an indefinite period than to permit it to go to a reference with a busy lawyer as referee. Only a drastic administrative rule, rigidly enforced, strictly limiting the matters in which a reference may be

---

disagreed with the conclusion reached in *Ingram* that the order of reference was pursuant to Rule 53(b) and that "exceptional conditions" need be shown. However, the Court stressed that its decision did not erode the validity of *La Buy*. 423 U.S. at 274, 96 S.Ct. at 556.

**4.** Rule 53(e)(2) provides in relevant part that "[i]n an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous."

had and requiring weekly reports as to the progress of each reference will put to rout this inveterate enemy of dispatch in the trial of cases."

*La Buy,* 352 U.S. at 253 n. 5, 77 S.Ct. at 312 n. 5.

The *La Buy* Court further observed that the district judge's "knowledge of the cases at the time of the references, together with his long experience in the antitrust field, points to the conclusion that he could dispose of the litigation *with greater dispatch and less effort* than anyone else." *Id.* at 256, 77 S.Ct. at 313 (emphasis supplied). *See also TPO, Inc. v. McMillen,* 460 F.2d 348, 361 (7th Cir.1972) ("The handling of the preliminary motion practice by the district judge not only assures a fairer result to the litigants but actually serves to reduce the time spent on the case.") (footnotes omitted); 9 C. Wright and A. Miller, *supra,* § 2605, at 791 ("reference of a non-jury case ... involves expense and delay"); C. Wright, *Law of Federal Courts* 656 (4th ed. 1983) ("the supposed procedural advantage [from a reference] must be considered in the light of the 'unbelievably long' delay and the increased expense to which the litigants will be subjected by a reference."). Moreover, adding another layer of review complicates the appellate *court's* task. *See Krinsley v. United Artists Corp.,* 235 F.2d 253, 257 (7th Cir.1956) ("The well-reasoned opinion of the trial judge indicated a careful and searching study of the voluminous record before the Master. Had the trial judge himself heard the evidence and then made the same findings and reached the same conclusions, this case could be disposed of here in a very short opinion."), *quoted in McMillen,* 460 F.2d at 361 n. 66.

Finally, it seems to us that the interest in a quick resolution of the case is simply an alternative way of asserting calendar congestion and the possibility of a lengthy trial as exceptional conditions justifying the reference. Because these factors were rejected by the *La Buy* Court and because we

believe the reference is as likely to delay as to expedite the case, we reject the district court's assertion that the interest in the speedy resolution of the action establishes an exceptional condition warranting the reference.

We are left with the district court's statement that the extraordinary pretrial management required in a case with more than 250 parties [5] justifies the reference. Although this rationale may be persuasive as to the reference of discovery matters, it is less so in regard to the reference of dispositive, pretrial motions. As the government argues, the legal issues are essentially the same regardless of the number of parties. In any event, the complexity of the case is not a factor that justifies appointing a special master. *La Buy,* 352 U.S. at 259, 77 S.Ct. at 315. Accordingly, we do not find this factor to establish the necessary showing of an "exceptional condition."

In support of its action, the district court first relied on *United States v. Conservation Chemical Co.,* 106 F.R.D. 210 (W.D. Mo.1985), and the cases cited therein. In *Conservation Chemical,* a CERCLA action involving over 250 parties, the district court entered an order of reference giving the special master authority "to order and preside over pretrial hearings, the authority to supervise and issue recommendations regarding pretrial matters, and the authority to hold hearings and issue recommendations on the claims for inclusion in any injunctive relief order and apportionment of costs." *Id.* at 216. In denying a motion seeking revocation of the special master's authority to conduct trial on major issues, the district court found that exceptional conditions existed because of a number of factors and concluded:

> Primarily, the Court believed that the assistance of a Master was warranted because of the need for a prompt resolution of serious claims alleging an immi-

---

5. We have since been informed that over 600 third-party defendants have been impleaded.

This does not alter our analysis.

nent and substantial endangerment to the public health and welfare and to the environment. In addition, the Court noted that the determination of complex factual issues relevant to liability and cost apportionment would require a comprehensive analysis of voluminous technical and scientific data. The Court also noted that the issues involved in this case were further complicated by the number of parties, the allegations of commingling of waste, and the absence of accurate documentation of chemical deposits because many of the disposal site's business records have been destroyed. In addition, the Court believed that a Master's participation was warranted because the vast amount of evidence necessary to litigate this case would result in extensive discovery requiring nearly constant supervision.

*Id.* at 217.

The district court next turned to a survey of the law and concluded that cases decided subsequent to *La Buy* indicate that the trial court's authority to appoint special masters is not as limited as the movants suggested. In support of this conclusion, the court cited a number of original actions in the Supreme Court in which the Court appointed special masters to hold and conduct hearings and to submit comprehensive recommendations resolving contested issues. 106 F.R.D. at 218 (citing, among other cases, *United States v. Louisiana,* 470 U.S. 93, 105 S.Ct. 1074, 84 L.Ed.2d 73 (1985)).

In our view, these cases do not support the district court's conclusion. In none of the Supreme Court cases cited did the Court expressly state Fed.R.Civ.P. 53 as the authority for the reference. Indeed, by its terms, the Federal Rules of Civil Procedure do not apply to the Supreme Court. *See* Fed.R.Civ.P. 1 ("These rules govern the procedure in the United States district courts ...."). In none of these cases did the Supreme Court indicate any need for a showing of exceptional conditions in order to justify the reference. A further indica-

tion that the Supreme Court does not act pursuant to Rule 53(b) in referring matters in original actions is that the Court conducts an independent review of the record. *See United States v. Louisiana, supra,* 105 S.Ct. at 1080 ("We have independently reviewed the record, as we must."). In contrast, Rule 53(e)(2) requires that the clearly erroneous standard be applied. Accordingly, these cases are of no assistance in resolving the present problem.

Other cases cited by the court in *Conservation Chemical* are also unpersuasive. For example, the court cited *Burgess v. Williams,* 302 F.2d 91 (4th Cir.1962), for the proposition that the number of parties involved and the nature and volume of evidence to be presented are relevant to the determination of whether exceptional conditions exist. *Burgess,* however, involved an action to be tried to the jury. Under the express terms of Fed.R.Civ.P. 53(b), complexity of the issues justifies a reference in an action to be tried to a jury. As we noted earlier, the *La Buy* Court expressly disavowed complexity as a justification for a reference in a nonjury case. Furthermore, of the other cases cited by the *Conservation Chemical* court, most dealt with accountings or damage computations, which are expressly stated in Fed.R.Civ.P. 53(b) to be proper matters for reference.

In any event, reliance on *Conservation Chemical* is questionable in that subsequent to that decision, several of the defendants petitioned the Eighth Circuit to issue a writ of mandamus to revoke the authority of the special master to prepare a report and recommendation pertaining to liability and remedy. *See In re Armco, Inc.,* 770 F.2d 103 (8th Cir.1985) (per curiam) (this is the second case relied on by the district court in the present case). The *Armco* court concluded:

We believe that the district court erred in granting the master authority to preside at trial on the merits of this case. We also believe, however, that the district court acted properly in granting the master the broad authority to supervise

and conduct pretrial matters, including discovery activity, the production and arrangement of exhibits and stipulations of fact, *the power to hear motions for summary judgment or dismissal and to make recommendations with respect thereto.* If the district court determines that liability rests with some or all of the parties, it may request the master to conduct evidentiary rehearings with respect to damages and alternative relief and make recommendations with respect to these matters. It may also direct the magistrate to monitor and supervise any injunctive relief granted and to make reports to it with respect to compliance with any decrees entered.

*Id.* at 105 (emphasis supplied).

As the italicized language indicates, *Armco* does support the district court's reference of dispositive motions in the present case. We do not, however, find *Armco* persuasive as we are unable to follow the court's reasoning. In its per curiam opinion, the Eighth Circuit first determined that the justifications offered by the district court had been found insufficient in *La Buy*. The court then inexplicably went on to partially uphold the reference.

The *Armco* court apparently drew a distinction between referring the *trial* to the master and referring *pretrial* matters. Although there may be some general validity to this distinction, we believe that dispositive motions should not fall on the "pretrial matters" side of the line. In our view, for purposes of the present analysis, dispositive, pretrial motions are more akin to the trial than to discovery matters.

An overriding concern in this area is that "since the master's findings must be accepted unless they are clearly erroneous, [the reference of a nonjury case] involves the danger that the master, not the court, will in fact decide the case." 9 C. Wright and A. Miller, *supra*, § 2605, at 791. In *La Buy*, the Supreme Court stated that the orders of reference "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the

court *on the basic issues involved in the litigation.*" 352 U.S. at 256, 77 S.Ct. at 313 (emphasis supplied). This language suggests that the "basic issues" should be decided by the district judge in the first instance. Accordingly, even though the reference of nondispositive discovery matters may be justified in some nonjury cases, it will be the extremely rare case where the reference of a dispositive matter (be it a pretrial motion for summary judgment or the actual trial) will be appropriate.

For all these reasons, we believe the district court abused its discretion in finding that the present case manifests exceptional conditions justifying the reference of dispositive motions to the special master. *See, e.g., Liptak v. United States,* 748 F.2d 1254 (8th Cir.1984) (per curiam) (district court abused its discretion in referring application for preliminary injunction); *Jack Walters & Sons Corp.,* 737 F.2d at 712 ("it would be contrary to Rule 53(b), as it has been understood and interpreted against a background of concern with the cost and delay created by using masters, to refer summary judgment motions in antitrust cases routinely to masters.").

■ Given our holding that the district court has abused its discretion, it remains for us to determine whether the erroneous reference in the present case presents exceptional circumstances warranting the use of the extraordinary remedy of mandamus. The Supreme Court has stated that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (quoting *De Beers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945)). The party seeking issuance of the writ must show that there is "no other adequate means to attain the relief he desires," and that his "right to issuance of the writ is 'clear and indisputable'" *Kerr v. United States District Court,* 426 U.S. 394, 403, 96

S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976) (quoting *Banker's Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)).

It is arguable that the writ should not be granted in the present case because a direct appeal would be an adequate means to review the propriety of the reference. However, this precise argument was rejected by the majority in *La Buy. Compare* 352 U.S. at 254–55, 77 S.Ct. at 312–13 *with id.* at 260–69, 77 S.Ct. at 315–20 (Brennan, J., dissenting). Thus, the writ may issue where the interlocutory order at issue "deprive[s] 'the parties of a trial before the court on the basic issues involved in the litigation.'" *Vickers Motors, Inc. v. Wellford,* 502 F.2d 967, 968 (6th Cir.1974) (quoting *La Buy,* 352 U.S. at 256, 77 S.Ct. at 313. *See also Califano v. Moynahan,* 596 F.2d 1320, 1321 (6th Cir.1979).

### III.

For the foregoing reasons, we conclude that the United States of America has shown clearly and indisputably that it is entitled to issuance of the writ because the district court's reference of dispositive motions to the special master will deprive the parties of their right to have the basic issues heard by the district judge. Accordingly, we order that the writ of mandamus issue directing the district court to vacate that part of its order of reference which authorizes the special master to hear argument on, and recommend resolution of, dispositive motions.