UNITED STATES of America; the State of New York, and UDC–Love Canal, Inc., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION, et al., Defendants.

No. CIV–79–990C.

United States District Court, W.D. New York.

Oct. 28, 1988.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div. (Bruce S. Gelber, of counsel), Washington, D.C., and Robert Abrams, Atty. Gen. of the State of N.Y. (Eugene Martin–Leff, of counsel), New York City, for plaintiffs.

Piper & Marbury (Thomas H. Truitt, of counsel), Washington, D.C., for defendant Hooker Chemical & Plastics Corp.

Gellman, Brydges & Schroff (Earl W. Brydges, Jr., of counsel), Niagara Falls, N.Y., for defendant City of Niagara Falls.

Phelps, Gray & Hewitt (James P. Hewitt, III, of counsel), Niagara Falls, N.Y., for defendant Bd. of Educ., City of Niagara Falls.

Hurwitz & Fine (Theodore J. Burns, of counsel), Buffalo, N.Y., for defendant Niagara County.

## SUPPLEMENTAL ORDER 31

CURTIN, Chief Judge.

Defendant Occidental Chemical Corporation [OCC] moves pursuant to ¶ 47 of the Case Management and Discovery Order [CMDO] (Item 507, revised by Item 721) to modify ¶¶ 2–4 of that order relating to the existing procedure for reference of discovery disputes to the Special Master. See Item 694. The United States, State of New York, Board of Education of the City of Niagara Falls, and County of Niagara have filed a joint memorandum (Item 710), and the City of Niagara Falls has filed a separate response (Item 708) in opposition to OCC's motion.

The modification proposed by OCC would provide for direct submission of "routine" discovery and case management matters to the Master without the need for preliminary application to the court on a case-by-case basis as currently provided by the CMDO. According to OCC, direct reference of such "ministerial" matters would reduce the expense and delay inherent in the type of formal motion practice now required by the reference procedure. The

proposal would also allow the Master to determine in the first instance whether the dispute is one properly before him or whether that dispute should be referred for resolution by the court.

The objecting parties contend that OCC's proposal would result in an impermissible expansion of the scope of the Master's authority in this case, is not supported by a showing of "exceptional conditions" as required by Fed.R.Civ.P. 53(b), and would be inconsistent with the traditionally limited role of masters in federal proceedings.

▇ Fed.R.Civ.P. 53(b) provides, in relevant part:

> **(b) Reference.** A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

Such reference should be made " 'to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause,' and not to displace the court," *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957) (quoting *Ex Parte Peterson*, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920)), and is especially discouraged where the matters sought to be referred may be dispositive of basic issues involved in the litigation. *In re United States*, 816 F.2d 1083, 1091 (6th Cir.1987).

▇ As pointed out by the objecting parties in the instant case, the characterization of a pretrial matter as relating in some way to discovery or case management does not necessarily render that matter "routine" or "ministerial," and it is often difficult at the onset of a dispute for an involved party to properly determine how to characterize such matters. Several pretrial motions that have been presented to and considered by the court during the course of this litigation, for example, have involved significant or novel questions of law or policy and may properly be thought of as dispositive.

Under OCC's proposal, as the court reads it, not only would a party be able to apply directly to the Master for resolution of a pretrial issue that may turn out to have dispositive bearing on the case, but the Master himself would be charged with the discretion to determine whether such an issue was properly before him. The current format of the CMDO allows the court, upon application of a party, to make that determination in the first instance on a case-by-case basis as pretrial issues arise, and thus provides for proper accommodation of the requirements of Rule 53(b). It therefore appears that the type of wholesale reference of discovery or case management matters proposed by OCC presents an unacceptable risk of having significant, potentially dispositive issues taken away from the court, resulting in possible "abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." *LaBuy*, 352 U.S. at 256, 77 S.Ct. at 313. Further, there has been no showing by OCC that "some exceptional condition requires" modification of the CMDO to allow for reference to the Master as a general rule. Essentially, the only justification offered by OCC for its proposed modification is the saving of "substantial expenditure of time and resources by the parties and the Court." Item 694, p. 3. As the objecting parties point out, however, direct reference to the Master is likely to result in additional delay and expense (or at the very least the same amount of delay and expense as under the current CMDO) not only in those cases in which a party questions the appropriateness of the reference, but also in cases where the Master files a report and a party objects. Fed.R.Civ.P. 53(e)(2):

> require[s] the district court to review the special master's recommendations and reject any findings of fact that are clearly erroneous.... Thus, the dispositive motions will in all probability have to be briefed and argued twice: first for the special master and then again for ultimate resolution by the district court. Moreover, ... the reference of dispositive motions will not reduce significantly

the court's overall involvement with those issues as the district judge will have to familiarize himself with the same facts and law upon which the special master bases her determinations.

*In re United States,* 816 F.2d at 1088.

For these reasons, OCC's motion to modify the CMDO is denied, and the parties shall continue to adhere to the procedure set forth in that order requiring application to the court on a case-by-case basis for an appropriate order referring particular discovery and case management disputes to the Special Master.

As an additional matter of importance, the parties have suggested various methods of establishing the priority of deciding the remaining substantive motions. *See* Items 723, 742–44. At a status meeting on March 18, 1988, the court and the parties discussed and agreed to a tentative schedule giving priority to OCC's CERCLA cross-motions. *See* Item 623. Subsequent to that meeting, however, the discovery of certain documents has prompted OCC to request that the court defer ruling on its CERCLA claims against the United States until such discovery is complete. In the interests of expeditious determination of the issues in this case, therefore, and in light of counsel for the State of New York's representation that such action may save substantial litigation costs for all parties, the court will immediately take up the State's claims, already fully briefed and argued, under the common law of public nuisance. Further briefing and argument on OCC's CERCLA claims shall be deferred until such time as the parties advise the court that those claims, including OCC's claim against the United States, can be heard and decided together.

SO ORDERED.